## Smith's Estate.

Argued April 18, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Joseph Neff Ewing,* of *Saul, Ewing, Remick & Saul, Murray F. Thompson, William E. Mikell, Jr.,* and *Smillie & Bean,* for appellants.

*Morris E. Smith,* with him *L. A. Gray,* for appellees.

OPINION BY MR. JUSTICE STERN, May 6, 1940:

We are concerned here with the construction of a written contract.

Ringless Piston Corporation of America, which owned certain patent rights for the manufacture of ringless pistons, was engaged in development work and in attempting to place its product upon the market. Dr. Fred W. Smith was one of its directors, and, apparently having confidence in the company's prospects, was willing to invest money in the enterprise. Accordingly a memorandum was prepared and signed by the parties whereby Smith agreed to purchase 150 shares of seven per cent full-paid, non-assessable, preferred stock, and to pay for it a sum not to exceed $13,500 in equal monthly installments of $1,000 per month, the first payment to be made on or before June 15, 1937, and the remaining payments on or before the 15th day of each succeeding month until the entire sum was paid.

The agreement provided that "if, after you [Smith] shall have paid the sum of Forty-five Hundred ($4,500) Dollars on account of the full purchase price, and after you have made a full and careful examination of the books and the business and the prospects of the business of the corporation, or for any other reason whatsoever, it shall appear to you that further payments by you should be discontinued, and you so notify the corporation in writing, then you shall be immediately released from making any further payments, and this contract

shall immediately become null and void and the corporation shall be bound to hand you a certificate for fifty (50) shares of its seven per cent (7%) full paid, non-assessable preferred stock as the consideration for releasing both of us [Smith and the corporation] from all of the obligations of this agreement." The corporation agreed that if at any time, in the opinion of its president or board of directors, further payments on the part of Smith should not be necessary for the proper conduct of the business, it would notify him in writing to that effect, and in consideration of the payments already made would give him the 150 shares; also, if at any time, in the opinion of its president, it appeared that the business of the corporation could not proceed in a profitable manner, so that it would be contrary to good business judgment and unfair to Smith to continue, the corporation would so notify him and release him from any further payments on account of the purchase price of the stock.

The concluding paragraph was as follows: "We believe that to all of the obligations of both of us as outlined, that both you and this corporation wish to be legally bound one to the other, and so we both likewise bind our heirs, executors, administrators and assigns; providing only, that in the event of your demise that your heirs, executors, administrators and assigns shall have the option to either continue or discontinue further payments on account of this agreement and that they will so notify the corporation of their intention with respect to this provision, within thirty days after the filing of your will and testament."

Smith paid the first two installments and $135 on account of the third, or $2,135 in all; about a week before he died he sent the corporation a check for $100, but because of his death it was not cashed. He died on the 20th of February, 1938, then owing, for accrued installments, the sum of $6,865. On March 8, 1938, his executors gave written notice to the corporation that they had decided

to discontinue further payments under the agreement, and requested a certificate made out to the estate for the shares for which he had paid prior to his death. At the audit of the executors' account the corporation presented a claim for $5,865,* admitting that, because of the discontinuance of the contract by the executors, it could not claim for installments falling due thereafter. The executors took the position that the estate was relieved from liability not only as to future installments, but also as to those accrued and unpaid at the time of decedent's death. The court below allowed the claim, with interest, and the executors appeal.

The controversy hinges upon the meaning to be ascribed to the words "further payments" in the paragraph of the agreement giving the executors the option to discontinue such payments. In our opinion the court below was right in its interpretation. When Smith agreed to pay $1,000 per month on the 15th day of each month, both he and the corporation must have assumed that the payments would be made as stipulated, and not that he would default in carrying out his obligations. When, therefore, they spoke of "further payments," they cannot have had in contemplation the application of this term to include overdue installments, there being no reason to suppose that such a condition would arise. What they evidently meant to cover was the future installments, if any, that would remain if Smith were to die during the pendency of the thirteen months required for the normal performance of the agreement. As each month went by, the obligation to make the payment for that month matured and Smith became liable accordingly; his subsequent death did not release his estate from the debt which then existed and for which the corporation at that time might have sued and obtained judgment.

---

* This was an error, the amount due being $6,865. The court, however, allowed the claim in the amount presented, and the corporation has not appealed.

As an alternative, partial defense to the claim, the executors assert that the estate should not be held liable in any event for more than $2,365, this sum being the difference between $4,500 and the $2,135 paid by Smith prior to his death. This contention is based upon the option given him in the agreement that, after paying $4,500, he could give written notice of his desire to discontinue further payments and receive fifty shares of the stock. The executors argue that if Smith were alive he could relieve himself from all obligation by the payment of $2,365, and they should now have the same privilege. This loses sight of what undoubtedly was the intention of the parties with reference to the optional right given to Smith. The contract must be read in the light of the circumstances under which it was made. The corporation was engaged in experimental work and depending upon the money derived from the sale of its preferred stock to carry on its operations. It was entitled to know at any given time where it stood with reference to its financial status and outlook. In giving Smith the right to discontinue after the payment of $4,500 the parties must have presumed, as already explained, that payments to that extent would have been completed at the end of four to five months, and at that stage of the transaction Smith was to have the option to quit. It could scarcely have been contemplated that he should have the privilege to fall into arrears for an indefinite period of time, and then, however belatedly, give notice of the intention to limit his liability by paying merely $4,500 of the balance then due. There would meanwhile have matured each month a $1,000 installment which would have been due and payable and which the corporation could immediately have reduced to judgment. At the very least, Smith could not thereafter relieve himself from the payment of future installments without paying those which had previously accrued.

Unfortunately—so the executors assert—the preferred stock of the company is of no present value, but the

estate must nevertheless fulfill the obligations which the decedent voluntarily assumed and which he recognized as existing at the time of his death. Of course, when the claim of the corporation is paid, it must issue to the estate the proper number of shares of preferred stock on the basis of $90 per share established by the agreement.

The decree is affirmed; costs to be paid by the estate.